IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| MICHAEL L. MCGINLEY et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:09-CV-00257-GAF |
| | ) | |
| MUNCHIKIN, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**SUGGESTIONS IN SUPPORT OF DEFENDANT MUNCHKIN'S
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..........................................................................................1

II.  BACKGROUND .........................................................................................1

III. LEGAL STANDARDS ...............................................................................3

    A.    Non-Infringement ...............................................................................3

    B.    Summary Judgment ...........................................................................4

IV.  ARGUMENT – THE MUNCHKIN SHAMPOO RINSER DOES NOT INFRINGE ..................................................................................................5

    A.    Claim Construction for Purposes of Summary Judgment.....................5

    B.    No Literal Infringement .....................................................................9

    C.    Prosecution History Estoppel Bars Plaintiffs from Relying on the Doctrine of Equivalents .......................................................................11

V.   CONCLUSION...........................................................................................14

CC 2164545v7

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ballard Med. Prods. v. Allegiance Healthcare Corp.*,
    268 F.3d 1352 (Fed. Cir. 2001)..................................................................... 3, 5

*Biagro W. Sales, Inc. v. Grow More, Inc.*,
    423 F.3d 1296 (Fed. Cir. 2005)....................................................................... 13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................................... 4, 5

*Exigent Technology, Inc. v. Atrana Solutions, Inc.*,
    442 F.3d 1301 (Fed. Cir. 2006)......................................................................... 4

*F & G Research, Inc. v. Google Inc.*,
    No. 06-60905-CIV, 2007 WL 2774031 at *8 (S.D. Fla. Sept. 21, 2007) ........................... 5

*Felix v. American Honda Motor Co.*,
    562 F.3d 1167 (Fed. Cir. 2009)................................................................... 11, 12

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)......................................................................................... 4

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
    344 F.3d 1359 (Fed. Cir. 2003)....................................................................... 13

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
    339 U.S. 605 (1950)......................................................................................... 4

*Honeywell Intl. Inc. v. Hamilton Sundstrand Corp.*,
    370 F.3d 1131 (Fed. Cir. 2004)............................................................. 11, 12, 13

*Intellicall, Inc. v. Phonometrics, Inc.*,
    952 F.2d 1384 (Fed. Cir. 1992)......................................................................... 3

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)............................................................................ 3

*Monsanto Co. v. Syngenta Seeds, Inc.*,
    503 F.3d 1352 (Fed. Cir. 2007)....................................................................... 11

*Morton Int'l, Inc. v. Cardinal Chem. Co.*,
    5 F.3d 1464 (Fed. Cir. 1993)............................................................................ 3

CC 2164545v7

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)............................................................................ 6

*RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*,
    326 F.3d 1255 (Fed. Cir. 2003)............................................................................ 4

*S. Bravo Systems, Inc. v. Containment Techs. Corp.*,
    96 F.3d 1372 (Fed. Cir. 1996).............................................................................. 3

*Terlep v. Brinkmann Corp.*,
    418 F.3d 1379 (Fed. Cir. 2005)............................................................................ 4

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997).................................................................................................. 3

**Rules**

Fed. R. Civ. P. 56(b) .................................................................................................... 4

Fed. R. Civ. P. 56(e) .................................................................................................... 5

Local Rule 56.1(a) ....................................................................................................... iv

CC 2164545v7

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

Pursuant to Local Rule 56.1(a), defendant Munchkin, Inc. ("Munchkin") contends that the following material facts are uncontroverted:

1. U.S. Patent No. 7,441,675 (the "'675 Patent") is directed to a "Flexible Panel Pitcher" that comprises a divided container with a flexible side wall. (*See* Ex. 1, '675 Patent, at col. 7, ll. 6-24, Figs. 5, 6).

2. All of the claims of the '675 Patent require "a divider spanning said interior [of the container] and contacting said bottom [of the container] to define first and second fluid-holding portions of said interior . . . ." (Ex. 1, '675 Patent, at col. 7, ll. 19-21, col. 8, ll. 16-18).

3. There is no divider spanning the interior, and contacting the bottom, of the Munchkin Shampoo Rinser that defines two separate fluid-holding portions. Photographs of the Munchkin Shampoo Rinser have been submitted electronically as Ex. 2 to this document, and a physical sample of the accused Munchkin Shampoo Rinser, also marked as Ex. 2, is being filed conventionally herewith.

4. The divider of the claimed invention defines two separate fluid-holding portions, or sources of fluid, thereby repositioning the location of a portion of the fluid held within the container with respect to the flexible portion of the sidewall. (Ex. 1, '675 Patent, at col. 7, ll. 19-21, col. 8, ll. 16-18, col. 6, ll. 18-22; Ex. 3, '675 Patent Prosecution History, October 2, 2007 Preliminary Amendment at p. 7[1]).

---

[1] Due to the voluminous nature of the '675 Patent Prosecution History, Munchkin has attached as Exhibits only those portions that are cited herein. Should the Court desire any of the remainder of that prosecution history, Munchkin will promptly provide it.

5.     Water from the first fluid source flows outwardly across the flex panel and is susceptible to a degree of diversion depending upon the amount of depression of the flex panel. (Ex. 1, '675 Patent, at col. 6., ll. 11-18, 22-25).

6.     The repositioned fluid, or the second source of fluid, provides "a source of flow that is not partially deflected from the object by the deflection of the flexible panel as it conforms to the shape of the child's head or other object to which the flexible panel is applied."  (Ex. 1, '675 Patent, at col. 2, l. 65 – col. 3, l. 4).  Thus, when the claimed container is pressed against an object and tipped upward, water from the second source "will flow outwardly and evenly across the width of the divider panel and onto the object," independent of the amount of depression of the flex panel of the container sidewall.  (Id. at col. 6, ll. 6-10).

7.     The inventors' application claims 1 and 7 initially recited all of the limitations of issued claims 1 and 7 of the '675 Patent **except** the divider limitations.  (Ex. 3, '675 Patent Prosecution History, October 2, 2007 Preliminary Amendment at pp. 1-2)(emphasis added).  The divider limitations appeared in application claims 30 and 31, which depended from application claims 1 and 7, respectively.  (Id. at p. 5).

8.     The Examiner rejected application claims 1 and 7 as anticipated by U.S. Patent No. 4,609,113 (to Seki).  (Ex. 4, '675 Patent Prosecution History, December 13, 2007 Office Action, ¶ 3).  However, the Examiner noted that claims 30 and 31 **would be allowable if rewritten in independent form** to include all of the limitations of claims 1 and 7, respectively. (Id., ¶ 7)(emphasis added).

9.     The inventors subsequently cancelled application claims 1 and 7 and rewrote claims 30 and 31 as independent claims that included the subject matter of claims 1 and 7,

CC 2164545v7

respectively. The rewritten claims appeared as application claims 32 and 33. (<u>Ex. 5</u>, '675 Patent

Prosecution History, March 12, 2008 Amendment and Remarks, pp. 3-4).

      10.     The Examiner then allowed application claims 32 and 33, which issued as claims

1 and 7 of the '675 Patent. (<u>Ex. 6</u>, '675 Patent Prosecution History, June 23, 2008 Notice of

Allowance).

CC 2164545v7

# I. INTRODUCTION

The patent at issue in this action, U.S. Patent No. 7,441,675 (the "'675 Patent"), is directed to a container intended for pouring water onto a child's head without getting it on the child's face. All of the claims of the patent require a divider spanning the interior portion of the container, and the divider is critical to the manner in which water flows from the claimed container. The allegedly infringing product at issue, the Munchkin Shampoo Rinser (the "Rinser"), does not contain any interior divider. Moreover, the doctrine of prosecution history estoppel bars Plaintiffs from claiming that the Munchkin Shampoo Rinser contains any divider equivalent (which the Rinser does not contain, in any event). Lacking the divider feature, the Munchkin Shampoo Rinser cannot and does not infringe any claim of the '675 Patent.

This issue is ripe for summary judgment. The patent's divider requirement is clear, and the structure and construction of the Munchkin Shampoo Rinser is not in dispute. In fact, the readily apparent facts in this case reveal a lack of any reasonable basis upon which to claim infringement. A ruling on this narrow issue, at this stage, will prevent the further unnecessary expenditure of time and resources by putting an end to what Munchkin considers to be nuisance claims brought in an effort to reinvigorate Plaintiffs' sagging sales of its own shampoo rinse cup.

# II. BACKGROUND

The claimed invention of the '675 Patent comprises of a divided container with a flexible side wall and, as noted, the invention is intended primarily for use in pouring rinse water on a child's head while preventing the flow of fluid into the child's face. (Statement of Uncontroverted Facts ("SUF"), ¶ 1). The flexible side wall conforms to the shape of the child's head in order to prevent fluid from flowing onto portions of the child's head to which it is not desirable to apply fluid. (Ex. 1, '675 Patent, at col. 2, ll. 51-57). The container's interior divider

1

allows for a (second) source of fluid flow that is not diverted by the deflection of the flexible

panel as it conforms to the object. (SUF, ¶ 5).



THE CLAIMED CONTAINER – U.S. PAT. NO. 7,441,675

The '675 Patent contains 12 claims—two independent claims (claims 1 and 7) and ten

dependent claims. Consistent with the patent's purpose, ***all*** of the claims require an interior

divider that defines two separate fluid-holding portions. Independent claim 1 is representative:

> 1. A container comprising:
> a generally rigid continuous side wall terminating in an upper side
> wall end and a lower side wall end and defining an inward
> space bounded by said continuous sidewall,
> a bottom closing said lower side wall end with said upper side wall
> end being generally open,
> an inwardly flexible panel forming a portion of said side wall and
> extending to form at least a portion of said upper side wall
> end, said flexible panel having a generally smooth inward
> surface for unobstructed fluid flow out of said open upper
> side wall end, and
> **a divider spanning said interior and contacting said bottom to
> define first and second fluid-holding portions of said
> interior**, said divider being oriented generally parallel to
> said flexible panel, said first and second fluid-holding
> portions operating to approximately concurrently pour a
> fluid onto the object pressed against said flexing panel.

(Ex. 1, '675 Patent, at col. 7, ll. 6-24 (emphases added)). The divider limitation(s) are absent from the Munchkin Shampoo Rinser and are addressed herein.[2]

## III.   LEGAL STANDARDS

### A.   Non-Infringement

The patentee/patent owner has the burden of proving infringement by a preponderance of the evidence. *See S. Bravo Systems, Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1376 (Fed. Cir. 1996) (citation omitted). A determination of patent non-infringement is a two-step process. The first step is to construe the relevant patent limitations. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). This process, called claim construction, is a question of law to be decided by the Court. *Id.* at 979. As such, "disagreement over the meaning of a term within a claim does not necessarily create a genuine issue of material fact." *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387 (Fed. Cir. 1992). The Court need not comprehensively construe all of a patent's claims or conduct a *Markman* hearing when the meaning of a single claim limitation is dispositive. *See Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001).

The second step of a patent infringement analysis is to compare the claims to the allegedly infringing device. *Markman*, 52 F.3d at 976. Infringement may be either literal or pursuant to the doctrine of equivalents ("DOE"). *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29-30 (1997). Literal infringement occurs only when the accused device includes each and every element of a patent claim. *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468 (Fed. Cir. 1993). Infringement under the doctrine of equivalents occurs when

---

[2] Independent claim 7's divider limitation(s) are identical to those appearing in claim 1. (Ex. 1, '675 Patent, at col. 8, ll. 16-21).

CC 2164545v7

the accused device contains every claim element or its substantial equivalent. *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1384 (Fed. Cir. 2005).

While the doctrine of equivalents allows a patentee to capture insubstantial alterations not falling within the literal scope of a claim, prosecution history estoppel bars the patentee from relying on the doctrine of equivalents to recapture claim scope that was surrendered in order to obtain the patent in the first place. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002). Moreover, a "substantial equivalent" of a claim element is present only when the accused device performs substantially the same function in substantially the same way to achieve substantially the same result as the claim element. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950).

### B. Summary Judgment

A party may move for summary judgment on a claim asserted against it at any time. Fed. R. Civ. P. 56(b). Summary judgment of non-infringement is proper when there are no genuine issues of material fact concerning the comparison of the construed patent claim(s) to the allegedly infringing device. *See RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255, 1266 (Fed. Cir. 2003). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In the context of motions for summary judgment of non-infringement, the Federal Circuit has explained that "nothing more is required than the filing of a summary judgment motion stating that the patentee ha[s] no evidence of infringement and pointing to the specific ways in which accused systems d[o] not meet the claim limitations." *Exigent Technology, Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1309 (Fed. Cir. 2006). The burden then shifts to the non-movant to "go beyond the pleadings and by her own affidavits, or

by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

## IV. ARGUMENT – THE MUNCHKIN SHAMPOO RINSER DOES NOT INFRINGE

As explained below, the Munchkin Shampoo Rinser at a minimum[3] lacks the '675 Patent's claimed "divider spanning [the] interior and contacting [the] bottom to define first and second fluid-holding portions of said interior."

### A. Claim Construction for Purposes of Summary Judgment

District courts have wide discretion in how they proceed in patent cases, and "there is nothing unique about claim construction that requires the court to proceed according to any particular protocol." *Ballard*, 268 F.3d at 1358. Speaking specifically about claim construction, the Federal Circuit has explained that "[i]f the district court considers one issue to be dispositive, the court may cut to the heart of the matter and need not exhaustively discuss all the other issues presented by the parties." *Id.* (affirming district court's decision to forego a complete construction of the claims before addressing infringement); *see also F & G Research, Inc. v. Google Inc.*, No. 06-60905-CIV, 2007 WL 2774031 at *8 (S.D. Fla. Sept. 21, 2007) ("F & G's position that the Court must conduct a claim construction before ruling on a motion for summary judgment is simply a misstatement of patent law.").

Here, as in *Ballard*, the ordinary meaning of one claim limitation in the '675 Patent (common to all claims) is dispositive of Plaintiffs' infringement claim(s). This limitation uses simple words to describe simple technology, and its ordinary meaning is readily apparent from the limitation language itself and the patent's specification. As such, it is entirely proper—

---

[3] Because the Munchkin Shampoo Rinser lacks a divider defining first and second fluid-holding portions, it also necessarily lacks a "divider being oriented generally parallel to said flexible panel" and "first and second fluid-holding portions operating to approximately concurrently pour a fluid onto the object pressed against said flexing panel." (Ex. 1, '675 Patent, col. 7, ll. 21-24). Munchkin in this motion, however, focuses only on the primary requirement of a divider defining first and second fluid-holding portions.

CC 2164545v7

indeed, preferable—for the Court to construe this narrow limitation for the purpose of ruling on the instant summary judgment motion. A ruling on this issue at this time will allow for a quick resolution of this matter, saving the parties and the Court significant wasted time and resources.

Concerning the substantive principles of claim construction, courts generally must give patent claim terms their ordinary and customary meaning, which is the meaning that the terms would have to a person of ordinary skill in the relevant art at the time of the filing of the patent application. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). The person of ordinary skill is deemed to read a claim term in the context of both the claims and the entire patent as a whole, including the specification. *Phillips*, 415 F.3d at 1313. Thus, the context in which a term is used within the relevant claim can be instructive, and the specification also "necessarily informs the proper construction of the claims." *Id.* at 1314, 1316. Indeed, the Federal Circuit has explained that the specification is the "best source" for understanding a term. *Id.* at 1315. In addition to considering the claims and the specification, courts may also consult the patent's prosecution history, which can reveal how the inventor and the PTO understood the patent. *Id.* at 1317. Because the prosecution history represents only an ongoing negotiation, however, "it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id..* Together the claims, specification, and prosecution history comprise the intrinsic evidence, which the Federal Circuit regards as the most important category of evidence in ascertaining the meaning of claim terms.[4]

---

[4] Although the Federal Circuit has also authorized courts to rely on extrinsic evidence under certain circumstances, it has explained that such evidence is less significant and less reliable than the intrinsic record. *Phillips*, 415 F.3d at 1317. It has especially noted that technical dictionaries and treatises may provide an understanding of the technology at issue and the manner in which one of ordinary skill might use a term. *Id..* at 1318. Courts also may consider expert testimony in certain circumstances, but the Federal Circuit has cautioned that unsupported assertions by experts are not useful and that testimony that is at odds with the intrinsic evidence should be discounted. *Id..*

CC 2164545v7

With these principles in mind, Munchkin turns to the specific limitation, present in all claims of the '675 Patent, that is dispositive of the issue of non-infringement:

> a divider spanning said interior and contacting said bottom to
> define first and second fluid-holding portions of said interior

(Ex. 1, '675 Patent, at col. 7, ll. 19-21, col. 8, ll. 16-18). This language on its face requires a complete and unbroken divider, or partition, creating two separate interior portions within the claimed container. Munchkin believes that this meaning is inherent in the plain language of the limitation, with or without further construction from the Court.

The unmodified term "divider" itself connotes a partition that, in fact, *divides* the interior of the container. The term "spanning" also connotes a divider that stretches across the *entire* interior space. Indeed, a bridge does not "span" a gorge unless it reaches continuously from one side to the other. That the claimed divider must define "first **and** second" (emphasis added) fluid-holding portions further confirms that the divider must be unbroken as it spans the interior of the container. An incomplete or broken divider would not define two *separate* spaces, but would merely give contour to one continuous space. Not surprisingly, both Figures 5 and 6 of the '675 Patent (attached as Ex. 1 and embedded on page 6, *supra*) plainly show a complete and unbroken divider creating two separate interior portions.

The specification of the '675 Patent also makes the nature of the claimed divider abundantly clear. The purpose of the divider, according to the specification, is to "provide a second source of fluid flow onto the object to which the container is applied ***to provide a source of flow that is not partially deflected from the object by the deflection of the flexible panel*** as it conforms to the shape of the child's head . . . ." (Ex. 1, '675 Patent, at col. 2, l. 65 – col. 3, l. 3 (emphasis added)) (SUF ¶ 5). Without a divider creating two separate interior portions, all of the water within the container would flow from one source, and the flexible panel of the container

7

side wall would deflect the entire flow.  The specification further states that "water contained in second compartment 44 will flow along divider panel 40 and will *flow outwardly evenly across the width of divider panel 40* . . . ."  (*Id.* at col. 6, ll. 7-9 (emphasis added)) (SUF, ¶ 5).  Water could not flow outwardly and evenly across the width of the divider if the divider did not completely span the interior of the container.

The inventors during prosecution of the '675 Patent provided a similarly clear explanation of the divider and its necessary attributes:

> *The function or use of the divider structure of the present combination is to reposition the location of a portion of the fluid held within the container with respect to the flexible portion of the sidewall.*  This repositioned fluid is held in the claimed "second fluid-holding portion."  This fluid may then be poured from the "second fluid-holding portion" of the container without the fluid stream being deflected toward the sides of the container by the intruding curvature of the flexed panel.

(Ex. 3, '675 Patent Prosecution Hist., at 10/2/07 remarks (at 7) (emphasis added)) (SUF, ¶ 3).  As explained above, in order for the divider to reposition fluid vis-à-vis the flexible panel of the container side wall, it must be complete and unbroken and must span the entire interior of the container in a way that prevents fluid from flowing onto the flexed panel as the container is tipped.

Thus, all of the intrinsic evidence unequivocally establishes that, pursuant to its ordinary meaning, the divider limitation requires a complete and unbroken divider, or partition, creating two separate interior portions within the claimed container.  Munchkin requests that the Court adopt and apply this plain meaning, regardless of whether it chooses to further formally construe the limitation.

8

**B.     No Literal Infringement**

There is no divider spanning the interior of the Munchkin Shampoo Rinser that defines

two separate fluid-holding portions, as required by the '675 Patent's divider limitation discussed

above.  This is clear from a basic examination of the Rinser, a sample of which has been

submitted concurrently herewith as Exhibit 2 and which is depicted in the photograph below[5]:



Unlike the container claimed in the '675 Patent, the Munchkin Shampoo Rinser has only one

continuous interior space in the container body.  The shape of this interior space is defined in

part by contours that form the handle of the external container body.  These contours, however,

do not result in any element that spans the interior space of the container or defines separate

---

[5]  There are no factual disputes concerning the construction or structure of the Munchkin products at issue.

interior portions.  As a result, there is only a single fluid holding portion of the interior space of the container, and *all* of the fluid contained in that interior space flows over, and is deflected by, the flexed panel of the container side wall when the container is in use.

The Munchkin Shampoo Rinser also contains a secondary front pocket, which is outside of and spaced away from any continuous side wall defining the container body and the interior portion of the container.  Because the claims of the '675 Patent require the divider and the first and second fluid-holding portions to span and occupy the "interior" of the container, no aspect of the secondary pocket can constitute a divider or a fluid-holding portion as claimed in the '675 Patent.  (<u>Ex. 1</u>, '675 Patent, at col. 7, ll. 19-21, col. 8, ll. 16-18) (*See* SUF, ¶¶ 2-3).  Similarly, the side wall of the main container body does not span any "interior" portion of the device, and thus cannot constitute a divider with respect to the pocket.  (*See* SUF, ¶¶ 2-3).  The claims of the '675 Patent also require the divider to contact the "bottom"—*i.e.*, the single, continuous bottom—that closes the lower side wall ends defining the main container body interior portion.  (*Id.* at col. 7, ll. 12-13, 19-21, col. 8, ll. 5-6, 16-18).  Because the secondary pocket is spaced away from the side wall defining the container body and the interior portion of the container, however, none of the walls defining the pocket contact any "bottom" that closes and defines the interior portion. (*See* SUF, ¶¶ 2-3).  Finally, the secondary pocket is unable to hold or disburse anything other than a negligible amount of water.  In short, the secondary pocket simply does not contain or give rise to a divider or a fluid-holding portion as claimed in the '675 Patent.

In sum, there can be no dispute that the Munchkin Shampoo Rinser lacks the divider claimed in the '675 Patent.  (SUF, ¶ 3).  As such, and because all of the claims of the '675 Patent contain a divider limitation, Munchkin is entitled to summary judgment that the Munchkin Shampoo Rinser does not literally infringe any claim of the '675 Patent.  *Cf. Monsanto Co. v.*

10

*Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) (explaining that if an accused device does not infringe an independent claim of a patent, it does not infringe the claims that depend from that claim).

      **C.**      **Prosecution History Estoppel Bars Plaintiffs from Relying on the Doctrine of Equivalents**

Plaintiffs' infringement claim(s) fare no better under the doctrine of equivalents, as prosecution history estoppel prevents them from claiming that any aspect of the Munchkin Shampoo Rinser is equivalent to the claimed divider.

The doctrine of prosecution history estoppel bars a patentee from asserting equivalents in an infringement action if the patentee narrowed the scope of the patent claims by amendment during prosecution in order to secure the patent. *Honeywell Intl. Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004). In other words, the patentee may not argue that claim scope surrendered during prosecution should be deemed equivalent to the literal terms of the claims as issued. *See id.* at 1139-40. When an applicant during prosecution rewrites a dependent claim into independent form and cancels the broader independent claim, a presumption of prosecution history estoppel arises with respect to the additional limitation(s) present in the dependent claim that were not present in the original independent claim. *Id.* at 1143-44; *Felix v. American Honda Motor Co.*, 562 F.3d 1167, 1183 (Fed. Cir. 2009). This is precisely what the inventors of the '675 Patent did during prosecution, and their actions now prevent them from claiming any equivalent with respect to the divider limitation.

Claims 1 and 7 of the inventors' application initially recited all of the limitations of claims 1 and 7 of the issued '675 Patent ***except*** the following divider limitations:

> a divider spanning said interior and contacting said bottom to
> define first and second fluid-holding portions of said
> interior, said divider being oriented generally parallel to
> said flexible panel, said first and second fluid-holding

> portions operating to approximately concurrently pour a
> fluid onto the object pressed against said flexing panel.

(Ex. 3, '675 Prosecution Hist., at 10/2/07 claims/amend.) (SUF, ¶ 6). Rather, in the initial

application, these divider limitations appeared in application claims 30 and 31, which depended

from application claims 1 and 7, respectively. (*Id.* at 10/2/07 claims/amend.) (SUF, ¶ 6). The

Examiner rejected application claims 1 and 7 as anticipated by U.S. Patent No. 4,609,113 (to

Seki), but noted that claims 30 and 31 would be allowable if rewritten in independent form to

include all of the limitations of claims 1 and 7, respectively. (Ex. 3, '675 Prosecution Hist., at

12/13/07 office action) (SUF, ¶ 7). The inventors subsequently cancelled application claims 1

and 7 and rewrote claims 30 and 31 as independent claims that included the subject matter of

claims 1 and 7, respectively. (SUF, ¶ 8). The rewritten claims appeared as application claims 32

and 33. (*Id.* at 3/12/08 Amend./Remarks) (SUF, ¶ 8). The Examiner then allowed application

claims 32 and 33, which issued as claims 1 and 7 of the '675 Patent. (*Id.* at 6/23/08 Not.

Allowance) (SUF, ¶ 9).

Given this prosecution history, the Federal Circuit's holdings in *Honeywell* and *Felix* are

directly on-point. The inventors rewrote dependent claims 30 and 31 in independent form, and

cancelled the original independent claims from which claims 30 and 31 depended. *Honeywell*

and *Felix* dictate that the inventors' amendment gives rise to a presumption of prosecution

history estoppel; the inventors surrendered their ability to claim the territory between application

claims 1 and 7 and application claims 30 and 31. *Honeywell*, 370 F.3d at 1143-44; *Felix*, 562

F.3d at 1183. The estoppel applies to the limitation(s) present in dependent claims 30 and 31

that were not present in independent application claims 1 and 7—i.e., all of the limitations

applicable to the claimed divider.  *Honeywell*, 370 F.3d at 1144.  Thus, by presumption, Plaintiffs may not claim any equivalents for any of the divider limitations.[6]

Plaintiffs cannot rebut this presumption, either.  The burden is on the patentee to rebut a presumption of surrender, even at the summary judgment stage, and whether the presumption has been rebutted is a question of law.  *Biagro W. Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1305 (Fed. Cir. 2005).  A patentee may only rebut the presumption of surrender by showing that: (a) the alleged equivalent would have been unforeseeable at the time of the amendment; (b) the rationale underlying the amendment bore no more than a tangential relation to the equivalent in question; or (c) there was "some other reason" that the patentee could not reasonably have been expected to have described the alleged equivalent.  *Id.*  The record in this case closes all of these avenues to Plaintiffs.

The inventors rewrote application claims 30 and 31 in independent form specifically in order to overcome the Examiner's rejection of application claims 1 and 7, and the limitations contained in claims 30 and 31 and the equivalents now at issue involve the *same* aspect of the claimed invention: the divider.  As such, it is hard to imagine how any potential equivalent concerning the divider could be unforeseeable, and the rationale underlying the inventors' amendment is *central*—not tangential—to any alleged divider equivalent.  *See Biagro*, 423 F.3d at 1306; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1369 (Fed. Cir. 2003) ("*Festo II*").  Finally, the Federal Circuit has cautioned that the "some other reason" rebuttal avenue should be narrowly applied and is only available when the patentee was prevented from describing an equivalent through something like a shortcoming of language.

---

[6]  Even if prosecution history estoppel did not apply, the Munchkin Shampoo Rinser contains no divider equivalent.  No feature of the Munchkin Shampoo Rinser performs substantially the same function in substantially the same way to achieve substantially the same result as the divider claimed in the '675 Patent.

CC 2164545v7

*Festo II*, 344 F.3d at 1370. No such circumstances exist here. The only reason the inventors were prevented from claiming a divider equivalent is because the Examiner found—and they conceded—that they were not entitled to claim anything short of the divider that they claimed. Plaintiffs cannot rebut the presumption of prosecution history estoppel.

Because the Munchkin Shampoo Rinser does not contain any divider as literally claimed in the '675 Patent, and because Plaintiffs are estopped from claiming any equivalents for such divider, Munchkin is entitled to summary judgment of non-infringement.

## V. CONCLUSION

The Munchkin Shampoo Rinser does not contain an interior divider and this undisputed fact makes it impossible for Plaintiffs to prove infringement. The Federal Circuit encourages courts to "cut to the heart" of easily defined, dispositive issues. This is precisely such an issue—where the relevant claim language and specification passages readily reveal the ordinary meaning of the divider limitation, the prosecution history on its face gives rise to estoppel concerning divider equivalents, and there are no factual disputes concerning the construction or structure of the Munchkin Shampoo Rinser. A ruling on this narrow issue, at this stage, will dispose of this case in its entirety and prevent the further unnecessary expenditure of time and resources by putting an end to what Munchkin considers to be nuisance claims. As such, Munchkin respectfully requests that the Court grant summary judgment in favor of Munchkin on Plaintiffs' claim(s) for infringement of the '675 Patent, and grant such further relief as it deems just and proper.

CC 2164545v7

Date: January 4, 2010                              Respectfully Submitted,

LATHROP & GAGE, LLP

/s/ R. Cameron Garrison
R. Cameron Garrison        MO 54064
CGarrison@LathropGage.com
David R. Barnard           MO 47127
DBarnard@LathropGage.com

2345 Grand Blvd., Suite 2800
Kansas City, MO 64108-2684
(816) 292-2000 - Telephone
(816) 292-2001 – Facsimile

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 4, 2010, I caused to be electronically filed with the Clerk of Court, United States District Court for the Western District of Missouri, using the CM/ECF system the above and foregoing, which will send a notice of filing to counsel for the Defendant addressed as follows:

Kip D. Richards
WALTERS BENDER STROHBEHN & VAUGHAN, P.C.
2500 City Center Square
1100 Main Street
P.O. Box 26188
Kansas City, MO 64196

/s/ R. Cameron Garrison
An attorney for Defendant Munchkin, Inc.

15