IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL L. McGINLEY, et al., | |
| Plaintiffs, | Case No. 09-0257-GAF |
| vs. | |
| MUNCHKIN, INC., | |
| Defendant. | |

**PLAINTIFFS' "MARKMAN" BRIEF IN SUPPORT OF
PROPOSED CLAIM CONSTRUCTION**

Plaintiffs submit this brief pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384 (1996). According to *Markman*, the Court is to consider the language of the patent claims in suit and pronounce the meaning of the claim language used. *Id.*

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. THE INVENTION AND PLAINTIFFS' PRODUCT ......................................2

III. THE APPLICATIONS AND PROSECUTION HISTORY ............................3

IV. LEGAL PRINCIPLES OF CLAIM CONSTRUCTION .................................3

    A. Intrinsic and Extrinsic Evidence ..............................................................4

    B. The Claims ..................................................................................................6

    C. Specification................................................................................................6

    D. Prosecution History ...................................................................................8

V. CONSTRUCTION OF THE ASSERTED CLAIMS

    A. "A container comprising . . ." ...................................................................8

    B. "a <u>generally rigid continuous side wall</u> terminating in an upper side wall end and a lower side wall end and defining an <u>inward space bounded by said continuous sidewall</u>,…" ............................................................9

       "a bottom closing said lower side wall end with said upper side wall end being generally open,…" ................................................................... 9

    C. "an <u>inwardly flexible panel</u> forming a portion of said side wall and extending to form at least a portion of said upper side wall end, said flexible panel having a generally smooth inward surface for unobstructed fluid flow out of said open upper side wall end…." ...................12

    D. "a <u>divider spanning said interior</u> and contacting said bottom to define first and second fluid-holding <u>portions</u> of <u>said interior</u>, said <u>divider</u> being <u>oriented</u> generally parallel to said flexible panel, said first and second fluid-holding portions operating to <u>approximately concurrently</u> pour a fluid onto the object pressed against said flexing panel" .............................................................................................................12

    E. "… further comprising a rim attached to said upper side wall end." .............13

VI. CONCLUSION ..................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313 (Fed.Cir.2003) ................................6

*Anchor Wall Systems, Inc. v. Rockwood Retainng Walls, Inc.,*
  340 F.3d. 1298 (Fed.Cir. 2003) ..........................................................................................7,8,11

*Autogiro Co. of America v. United States,* 384 F.2d at 391 (Ct. Cl. 1967) ....................................7

*CIAS, Inc. v. Alliance Gaming Corp.,* 504 F.3d 1356 (Fed.Cir. 2007) ............................................9

*CIF Licensing, LLC v. Agere Systems Inc.*, 565 F.Supp.2d 533 (D. Del. 2008) ............................11

*Comark Communications Inc. v. Harris Corp.,* 156 F.3d 1182 (Fed.Cir.1998) ..........................7,11

*Fitness Quest Inc. v. Monti*, 2007 WL 2359821 (N.D. Ohio, Aug. 16, 2007) ............................6,11

*Gart v. Logitech, Inc.*, 254 F.3d 1334 (Fed. Cir. 2001) .................................................................11

*In re Skvorecz*, 580 F.3d 1262 (Fed.Cir. 2009) ...............................................................................9

*Interactive Gift Express, Inc. v. Compuserve, Inc.,* 256 F.3d 1323 (Fed.Cir.2001) ........................4

*Intervet America v. Kee-Vet Laboratories, Inc.*, 887 F.2d 1050 (Fed.Cir. 1989) ............................6

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967
  (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ...............................................................................4

*Markman v. Westview Instruments, Inc.,* 517 U.S. 370 (1996) ...................................................3,6

*Nazomi Communications, Inc. v. ARM Holdings, PLC,* 403 F.3d 1364 (Fed.Cir. 2005) ...............7

*Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed.Cir.2005) ................................................4,5,6,7,8,11

*Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298 (Fed.Cir.1999) ..................................4

*Smith v. Snow*, 294 U.S. 1 (1935) .................................................................................................7,8

*Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313 (Fed.Cir. 2002) ...........................5,7

*Varco, L.P. v. Pason Systems USA Corp.*, 436 F.3d 1368 (Fed.Cir. 2006) ....................................6

*Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576 (Fed.Cir.1996) ..........................................4,5

**I.     INTRODUCTION**

The patent at issue is U.S. Patent 7,441,675 (the "'675 Patent"), which issued to Plaintiff Michael L. McGinley ("McGinley") on October 28, 2008. (Ex. A)[1]  The '675 Patent covers a "flexible panel pitcher" invention. The gist of the invention is to thoroughly rinse shampoo from the head of a child without tears or trouble. (Id.)[2]  McGinley and his company, Plaintiff S.C. Products, Inc. ("SCP"), sell a commercial embodiment of the invention known as the *Shampoo Rinse Cup*. (Ex. B, ¶6; Ex. C)  Plaintiffs (SCP) began selling the *Shampoo Rinse Cup* in September 2004. (Id.)  Plaintiffs (SCP) have sold the *Shampoo Rinse Cup,* along with a handful of other products, to Wal-Mart, Babies-R-Us and a handful of other retailers in the US and abroad. (Id., ¶8)

Defendant Munchkin, Inc. ("Munchkin") is a privately-held corporation based in California. Munchkin distributes a variety of child-care and pet products to over 25,000 retailers world-wide. (Ex. B, ¶10 & B-4)  Munchkin markets itself as a "developer" of "innovative products that excite and delight parents, children and pets." (Id.)  Munchkin is a large, sophisticated business, itself claiming to hold more than 50 U.S. Patents. (Id.)  Munchkin claims in this case that it first learned about McGinley's *Shampoo Rinse Cup* in April 2008. (Ex. D, No. 11)  A few months later, Munchkin brought its own competing product to market. Munchkin called its product the "*Shampoo Rinser.*" (Ex. E)  The similarity between the *Shampoo Rinser* and McGinley's *Shampoo Rinse Cup* does not end with the name. The object of both devices is the same – to provide a "tear-free" rinse at bath time. (Ex. B; Ex. E)  Both devices accomplish this

---

[1]  Brian Lau is identified as a co-inventor on the '675 Patent. However, in February 2004, Mr. Lau assigned all of his right title and interest in and to the '675 Patent to McGinley. (Ex. B, ¶¶3, 4 & B-1)

[2]  The '675 Patent claims are not limited solely to rinsing "shampoo"; nor are the claims limited to the head of a "child." (Ex. A)

1

goal in precisely the same way – by means of an "inwardly flexible panel" and an "inner divider." (Id.)

Plaintiffs assert that the Munchkin *Shampoo Rinser* is what is known in the industry as a "knock-off"– specifically a "knock off" of the *Shampoo Rinse Cup*. Plaintiffs submit that, after noting the considerable success of McGinley's *Shampoo Rinse Cup*, Munchkin deliberately chose to copy McGinley's product, in view of the '675 Patent and application, and that Munchkin's actions were undertaken solely in effort to evade McGinley's patent rights. Plaintiffs allege that the Munchkin *Shampoo Rinser* infringes the '675 Patent, literally or under the "doctrine of equivalents." Although the embodiment of the Munchkin *Shampoo Rinser* appears slightly different from Plaintiffs' *Shampoo Rinse Cup*, the Munchkin *Shampoo Rinser* falls squarely within the ambit of the '675 Patent or, at the very least, is an infringing equivalent of the patented invention.

## II.     THE INVENTION AND PLAINTIFFS' PRODUCT

The device disclosed in the '675 Patent is a "flexible panel pitcher" device. In general, the patented invention is a container of no particular size or shape that has (1) an "inwardly flexible panel," which creates a watertight seal above the child's face (Ex. A at 7:14-18; 8:11-15; 1:8-15; 4:36-42, 43-5:30; 5:31-44, 5:58-62)[3], and (2) an inner divider, which creates at least two fluid-holding compartments to apportion the rinse water. (Ex. A at 7:19-24; 8:16-21; 5:62-6:36) The ingenuity of the patented invention is reflected in part in the inwardly flexible panel and the generally parallel inner divider. These two components distribute the flow of rinse water over the front and sides and top and back of the child's (or adult's) head and ensure a "tearless," full-coverage pour of rinse water. (Ex. A at 1:8-3:14; 5:54-6:30) The result is a clean and shampoo-

---

[3]   All references to the '675 Patent are first to the column number and then to the line number or numbers.

free head, and no water or soap in the face.

A commercial embodiment of McGinley's invention experienced considerable success soon after Plaintiffs started selling it. McGinley's design received the *2007 Kind & Jugend Innovation Award for Baby Care Products* and the TIPS Clever Design Award for 2008. (Ex. B, ¶8 & B-2, B-3) Munchkin recognized the ingenuity of McGinley's invention and undeniably copied it. Munchkin's "version" of the flexible panel pitcher deliberately duplicates McGinley's invention.

## III. THE APPLICATION AND PROSECUTION HISTORY

The '675 Patent issued on October 28, 2008 from continuation-in-part application 10/770,325, filed February 2, 2004 ("2004 CIP Application"). (Ex. A) A complete and accurate copy of the prosecution history for the 2004 CIP Application is submitted with this Brief as Exhibit F. Application 10/357,651 (now abandoned) was the original application from which 2004 CIP Application derived on February 4, 2003 ("2003 Application"). (Ex.'s A, F.) McGinley also filed two additional continuation-in-part applications from the 2004 CIP Application, specifically, Application 11/850,476, filed September 5, 2007, and Application 12/255,797, filed October 22, 2008. The two latter applications have been published and remain pending.

## IV. LEGAL PRINCIPLES OF CLAIM CONSTRUCTION

Patent infringement analysis involves two steps. In the first, the Court construes the disputed claims of the patent in suit as a matter of law. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 372 (1996) (the construction of a patent claim is "exclusively within the province of the court"). In the second, the properly construed claims are compared to the allegedly infringing product to determine whether an infringement occurred. *Id.* at 384. This second step,

3

deciding whether the accused product infringes an asserted claim, "is a question of fact, to be submitted to a jury." *Id.*

### A. Intrinsic and Extrinsic Evidence

In order to properly construe the claims of a patent, the court should look first to the intrinsic evidence of record, *viz.*, the patent, including the claims, the specification and, if in evidence, the prosecution history. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed.Cir. 2005). The intrinsic evidence is "the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir. 1996). A court may also consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips,* 415 F.3d at 1317. Extrinsic evidence "can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* at 1318. Extrinsic evidence, however, is less reliable than intrinsic evidence in determining **how to interpret claim terms**. *See id.* at 1318-19. Courts should rely on extrinsic evidence to **construe** claim terms only if "the patent documents, taken as a whole, are insufficient to enable the court to construe disputed claim terms." *See, e.g., Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1308-09 (Fed.Cir.1999); *Interactive Gift Express, Inc. v. Compuserve, Inc.,* 256 F.3d 1323, 1332 (Fed.Cir.2001) ("[r]elying on extrinsic evidence to construe a claim is 'proper only when the claim language remains genuinely ambiguous after consideration of the intrinsic evidence'"); *Markman*, *supra*, 52 F.3d at 981 ("[e]xtrinsic evidence is to be used for the court's understanding

of the patent, not for the purpose of varying or contradicting the terms of the claims").

### B. The Claims

A court's examination of the intrinsic evidence in a claim construction analysis begins with the words of the disputed claims. *Vitronics,* 90 F.3d at 1582. The patent claims "define the invention to which the patentee is entitled the right to exclude." *Phillips,* 415 F.3d at 1312. "[Hence,] the claim construction inquiry … begins and ends in all cases with the actual words of the claim." *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1324 (Fed.Cir. 2002). A court must "look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention." *Vitronics,* 90 F.3d at 1582. "In the absence of an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning." *Teleflex*, 299 F.3d at 1325. The ordinary meaning is the meaning that the patent terms would have "to a person of ordinary and customary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips,* 415 F.3d at 1313.

The inquiry into how a person of ordinary skill in the art understands a claim term "provides an objective baseline from which to begin claim interpretation." *Id*. This starting point is "based on the well-settled understanding that inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be read by others of skill in the pertinent art." *Id*. "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*. A court construing a patent must do likewise. However, the court should keep in mind that "[t]he goal of claim construction is not to 'dumb down' the language of the claim to make it entirely accessible

5

to a lay person, but to ensure that the language of the claim is intelligible to one ordinarily skilled in the art at the time of the invention." *Fitness Quest Inc. v. Monti*, 2007 WL 2359821, *1 (N.D. Ohio, Aug. 16, 2007).

### C. Specification

The patent claims must also be "'read in view of the specification, of which they are a part.'" *Phillips,* 415 F.3d at 1315 (quoting *Markman,* 52 F.3d at 979). The specification contains a written description of the invention, the manner and process of making and using it, and the "best mode" or preferred embodiment contemplated by the inventor of carrying it out. *See* 35 U.S.C. § 112, ¶1. The specification is the part of the patent that "teaches" the invention so that one skilled in the art can make and use it "without undo experimentation." *Amgen, Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313, 1335 (Fed.Cir.2003). The specification 'is always highly relevant to the claim construction analysis." *Phillips,* 415 F.3d at 1315. "Usually, it is dispositive; [the specification] is the single best guide to the meaning of a disputed term.'" *Id*.

Importantly, though, the use of the specification to construe a disputed patent claim must not be confused with reading limitations from the specification into the Asserted Claims. The federal circuit "has consistently adhered to the proposition that courts cannot alter what the patentee has chosen to claim as his invention, that limitations appearing in the specification will not be read into claims, and that interpreting what is *meant* by a word *in* a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper." *Intervet America v. Kee-Vet Laboratories, Inc.*, 887 F.2d 1050, 1053 (Fed.Cir. 1989); *see, e.g., Varco, L.P. v. Pason Systems USA Corp*., 436 F.3d 1368, 1373 (Fed.Cir. 2006) ("[i]n examining the specification for proper context, … this court will not at any time import

6

limitations from the specification into the claims"); *see also, e.g., Phillips,* 415 F.3d at 1323 ("we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment"); *Anchor Wall Systems, Inc. v. Rockwood Retainng Walls, Inc.,* 340 F.3d. 1298, 1306-07 (Fed.Cir. 2003) ("the mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration"); *Teleflex*, 299 F.3d at 1326 ("claims must be read in view of the specification, … but limitations from the specification are not to be read into the claims"); *Comark Communications Inc. v. Harris Corp.,* 156 F.3d 1182, 1186 (Fed.Cir.1998) ("w]hile claims are to be interpreted in light of the specification and with a view to ascertaining the invention, it does not follow that limitations from the specification may be read into the claims").

The Supreme Court declared long ago that an inventor need not "embrace in the claims or describe in the specifications all possible forms in which the claimed principle may be reduced to practice." *Smith v. Snow*, 294 U.S. 1, 11 (1935); *Nazomi Communications, Inc. v. ARM Holdings, PLC,* 403 F.3d 1364, 1369 (Fed.Cir. 2005) (claims may embrace "different subject matter than is illustrated in the specific embodiments in the specification"). As a result, "[c]laim interpretation must not make use of 'best mode' terms inasmuch as the patentee need not guard against infringement by listing every possible infringing device in the specification." *Autogiro Co. of America v. United States,* 384 F.2d at 391 398 (Ct. Cl. 1967). To avoid importing limitations from the specification into the claims, it is important to keep in mind the specification's purpose. "[T]he purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Phillips,* 415 F.3d at 1323. The specification identifies the "best mode" of practicing an invention, not the

scope of the invention. "[T]he claims of the patent, … measure the [scope of the] invention." *Smith*, 294 U.S. at 11.[4]

### D. Prosecution History

The Court should also consider, within its proper context, the patent's prosecution history in construing patent claims. The prosecution history "provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. However, the value of the prosecution history, which often lacks the clarity of the specification, is more limited than the specification because it represents an ongoing negotiation [between the PTO and patentee as to the allowance of the claims] rather than the final product of that negotiation." *Id*. Any limitation found in the prosecution history must be "clear and unmistakable." *Anchor Wall*, 340 F.3d at 1307.

## V. CONSTRUCTION OF THE ASSERTED CLAIMS

Plaintiffs currently assert that the Munchkin *Shampoo Rinser* infringes claims 1, 2, 4, 6, 7 and 12 of the '675 Patent (the "Asserted Claims"). Claims 1 and 7 are independent claims. The remaining claims (2, 4, 6 and 12) are dependent claims. The Court should construe the following language contained in the Asserted Claims based on evidence and record before it as follows:

### A. "A container **comprising**…."

The Court should hold that the word "comprising" as used in the Asserted Claims (viz.,

---

[4] The specification of the '675 Patent explicitly states: "As required, detailed embodiments of the present inventions are disclosed herein; however, it is to be understood that the disclosed embodiments are merely exemplary of the invention, which may be embodied in various forms. Therefore, [the] specific structural and functional details disclosed herein are not to be interpreted as limiting, but merely as a basis for the claims and as a representative basis for teaching one skilled in the art to variously employ the present invention in virtually any appropriately detailed structure." (Ex. A, 6:38-46)

independent Claims 1 and 7, and thus, dependent claims 2, 4, 6, and 12) means "including but not limited to." "In the patent claim context the term 'comprising' is well understood to mean 'including but not limited to.'" *In re Skvorecz*, 580 F.3d 1262, 1267 (Fed.Cir. 2009) (quoting *CIAS, Inc. v. Alliance Gaming Corp.,* 504 F.3d 1356, 1360 (Fed.Cir. 2007)). "Comprising" simply means that the device "may contain elements in addition to those explicitly mentioned in the claim." *Id*.

> **B.** **"a <u>generally rigid continuous side wall</u> terminating in an upper side wall end and a lower side wall end and defining an <u>inward space bounded by said continuous sidewall</u>,…"**
>
> **"a bottom closing said lower side wall end with said upper side wall end being generally open,…"**

The language of the claims and specification reveals that, although the patented container is limited to a class of containers "used to hold fluids" (Ex. A at 7:1-34; 8:1-32; 1:8-15), the fluid-holding container, itself, does not have to be of any particular size or shape; initially, the "container" need only be able to hold and allow for fluid to be poured from it. (Ex. A at 7:7-24; 8:1-21; 1:8-9; 2:47-51; 3:52-55; 3:55-60) In addition, the patented container, like any container designed to hold and pour fluids, must be comprised of "a generally rigid continuous side wall," meaning a side wall rigid enough to "hold a fluid," which comes together and in whatever shape, in whatever planes, and at whatever points, to define an "inward space" "bounded" by the "continuous side wall." (Ex. A 3:55-60; 5:56-58; 7:8-11) As used in the context of the patented invention, "continuous" means "formed from one continuous piece" – whether molded as such or conjoined.

Importantly, neither Claim 1 nor any of the other Asserted Claims defines or limits the size or shape (or color) of either the "container" **or** the "inward space bounded by [the] continuous side wall" that forms the container. (Ex. A 7:7-24; 8:1-21; 4:8-9) No such

9

limitation is present. No such limitation should be read into the Asserted Claims. Munchkin will likely argue otherwise and contend that the "inward space" bounded by the continuous side walls must be cylindrical or generally even from bottom to top. If made, the Court should reject such a proposed construction.

The language of the Asserted Claims, as approved by the Patent Office, is undeniably broad and contains no such limitation. The Asserted Claims fairly encompass any number of shaped containers and "inward spaces," even and uneven. The Asserted Claims are limited by features other than size and shape. The "continuous side wall" must have ends, specifically: (1) a "lower end" with "a bottom" "closing" off the "lower side wall end" (so that fluid can be contained) (Ex. A 3:60-67) and (2) an "upper end," which is "generally open" (so that the fluid can be dispensed) (Ex. A 2:47-51; 7:8-13). No other limitations are imposed by the claims, the specification or the prosecution history. The size and shape of the "bottom" closing the lower side wall end, and the size and shape of the opening at the upper side wall end are not specified or limited. Nor is the diameter or other cross-distance of the "continuous" side wall "boundary" that defines (creates or makes) the "inward space" limited along the container's horizontal or vertical axes. Thus, the continuous side wall of which the container is comprised can be one shape and/or size at the lower end, another shape and/or size at the upper end, and any a number of shapes and/or sizes in between. The side wall need only be continuous in the sense that it is formed from one "continuous" piece.[5] This is the only meaning that reasonably can be ascribed to the language. The specification makes it clear that the shape of the container is not limited to a cylinder or any other specific shape. (Ex. A 3:52-55; 4:11-19)

Munchkin may also urge the Court to limit the Asserted Claims to the preferred

---

[5] A side wall can be "continuous" for purposes of the '675 Patent if molded from one piece, or if created from multiple pieces joined together to form a "continuous" piece.

embodiment of the invention as described in the specification (Ex. A 3:53-6:67), or to a device shown by the drawings (Fig.'s 1-6). If made, the Court should reject this argument too. The scope of the Asserted Claims is not limited to what is shown by the drawings or to the preferred embodiment described in the specification. *Anchor Wall Sys.,* 340 F.3d, at 1306-07 ("the mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration"); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1343 (Fed. Cir. 2001) ("it is well established that broad claims supported by the written description should not be limited in their interpretation to a preferred embodiment"); *Comark*, 156 F.3d at 1187 ("[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims"); *CIF Licensing, LLC v. Agere Systems Inc.*, 565 F.Supp.2d 533, 536 (D. Del. 2008) ("where a patent drawing is set forth as a preferred embodiment of the invention, such a drawing is not meant to represent 'the' invention or to limit the scope of coverage defined by the words used in the claims themselves"); *Fitness Quest Inc. v. Monti* , 2007 WL 2359821, *6-7  (N.D. Ohio 2007) ("[A] court construing claim terms may not limit its reading of those terms on the strength of a figure depicting a single preferred embodiment"); *see Phillips,* 415 F.3d at 1323 ("we have repeatedly warned against confining the claims to [the inventor's preferred] embodiments … [and have] expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment"). Accordingly, the Court should hold that the phrase "a generally rigid continuous side wall" means "a side wall rigid enough to hold fluid that comes together in whatever shape, and in whatever planes, and at whatever points, to define an inward space." Such a construction is consistent with the language of the patent claims, the

specification and the purpose of the invention.

> C. **"an <u>inwardly flexible panel</u> forming a portion of said side wall and extending to form at least a portion of said upper side wall end, said flexible panel having a generally smooth inward surface for unobstructed fluid flow out of said open upper side wall end…."**

The language of the patent claims and specification reveals that the patented container is comprised of an "inwardly flexible panel" having a "generally smooth inward surface" (to allow for "unobstructed fluid flow") and forming at least "a portion" or part of "the upper side wall end." (Ex. A. at 7:14-18; 4:43-5:53) The meaning of this language is straightforward. Neither the size nor shape of the "inwardly flexible panel" is specified. Accordingly, the Court should hold that the term "inwardly flexible panel" means "an inwardly flexible panel of no particular size or shape." No other construction is necessary. The jury can readily decide whether the Munchkin device has "an inwardly flexible panel" that forms a portion of [the product's] side wall, and extending to form at least a portion of said upper side wall end," and whether the panel has "a generally smooth inward surface for unobstructed fluid flow out of said open upper side wall end."

> D. **"a <u>divider spanning said interior</u> and contacting said bottom to define first and second fluid-holding <u>portions</u> of <u>said interior</u>, said <u>divider</u> being <u>oriented</u> generally parallel to said flexible panel, said first and second fluid-holding portions operating to <u>approximately concurrently</u> pour a fluid onto the object pressed against said flexing panel."**

Finally, the language of the claims and specification reveals that the patented container has a "divider" (something that separates), which both (a) "spans" (crosses) the "interior" (the "inward space bounded by [the] continuous side wall") and (b) "contacts" (touches) the "bottom" closing off the lower side wall end in order to "define" (make or create) first and second fluid-holding portions of said interior ("inward space bounded by [the] continuous side wall"). (Ex. A

12

at 7:19-21; 5:54-6:37) In addition, the "divider" must be positioned "generally parallel" to the "inwardly flexible panel" as construed above so that the "first and second fluid-holding portions" or "compartments" operate to "approximately concurrently pour a fluid onto the object pressed against said flexing panel." (Ex. A. at 7:21-24; 5:54-6:37) This language, too, is straightforward. Accordingly, the Court should hold that: (a) the word "divider" means "something that separates into portions or parts" (7:19-24; 8:16-21; 2:65-3:4; 3:40-47; 5:54-6:30; Ex. F at 097-098); (b) "interior" means the "inward space bounded by the continuous side wall" (7:8-11,19;8:2-4,16); (c) "define" means "to make or create" (7:19-24; 8:16-21); (d) "portion" or "portions" means "part" or "parts" (7:14-15; 8:8-10, 11-15, 16-21, 22-24; 3:23-26; 4:11-23, 43-54; 63-5:40; 5:11-24, 38-53; 6:11-22); and (e) "approximately concurrently" means "at or about the same time" (Ex. A at 6:3-30). These are the only meanings that reasonably can be ascribed to these words and phrases based on the patent claims and specification. No additional construction is necessary. The jury can readily decide whether the Munchkin device has an "inner divider" that is, something that separates fluid within the container, which both (a) "spans" the "inward space bounded by the continuous side wall" and (b) "contacts" the "bottom" closing off the lower side wall end in order to make or create first and second fluid-holding portions of the "inward space." The jury can also decide whether the inner divider in the Munchkin device is positioned "generally parallel" to an "inwardly flexible panel," as construed above, such that the "first and second fluid-holding portions" of the container "operate to pour a fluid onto the object pressed against said flexing panel" "at or about the same time." (Ex. A at 6:3-30)

**E.     … further comprising a <u>rim</u> <u>attached to</u> said upper side wall end.**

The Court should hold that the word "rim" as used in Claims 2, 4, 7 and 12 means "an

13

outer edge or border, whether formed from or connected to the upper side wall end." (Ex. A at 3:67-4:4) In addition, the Court should hold that the term "attached to" means "connected to." (Ex. A at 7:26; 8:7) No additional construction is necessary; no additional limitations should be imposed. (3:67-4:42) Neither Claim 6 nor the remaining language of Claims 1, 2, 4, 7 and 12 needs any additional construction.

## VI. CONCLUSION

For the reasons above, the Court should conclude as a matter of law that the language of the Asserted Claims shall be construed consistent with its ordinary and customary meaning and hold that the particular words and phrases identified above shall be construed as Plaintiffs suggest.

Dated: January 22, 2010

Respectfully Submitted,

WALTERS BENDER STROHBEHN
&. VAUGHAN, P.C.

By  */s/ Kip D. Richards*
  Kip D. Richards - Mo. Bar 39743
  2500 City Center Square
  1100 Main Street
  P.O. Box 26188
  Kansas City, MO 64196
  (816) 421-6620
  (816) 421-4747 (Facsimile)

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that this document was filed electronically with the United States District Court for the Western District of Missouri, Western Division, **this 22nd day of January 2010,** with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons.

                                                    /s/ Kip D. Richards